1165 PARK AVE. CORPORATION v.
BOWLES, Price Administrator.
No. 167.

United States Emergency Court of Appeals.
Heard at New York Feb. 8, 1945.

Decided June 25, 1945.

Charles E. Hughes, Jr., of New York City (Hughes, Hubbard & Ewing, Curtiss E. Frank, and Barbara H. Woodward, all of New York City, on the brief), for complainant.

Warren L. Sharfman, Chief, Court Review Rent Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Maurice Alexander, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainant is the owner of rental housing accommodations in New York City. It is subject to the Rent Regulation for Housing for the New York City Defense Rental Area.[1] In its protest the complainant contended that as to it the rent regulation was invalid because it established March 1, 1943, rather than March 1, 1942, as the maximum rent date. The protest was denied. The complaint filed in this

---

[1] 8 F.R. 13914, issued October 8, 1943, and effective November 1, 1943.

court is based upon the same objection to the rent regulation.

The complainant's attack upon the rent regulation makes the following facts pertinent: On April 28, 1942, the Administrator issued a Designation of 259 Defense-Rental Areas and Rent Declaration Relating to Such Areas. Among the Defense-Rental Areas designated was New York City. The Rent Declaration recommended that maximum rents for housing accommodations in the areas be stabilized by local officials at the March 1, 1942, level. This Designation and Rent Declaration was given wide publicity in the metropolitan newspapers. It was published in the Federal Register on April 30, 1942.[2] Inquiries were made of the regional office of the Office of Price Administration as to its interpretation. In accordance with their practice the officials of that office refused to give written answers to hypothetical questions but did answer the following question orally in the affirmative: "Can an apartment rented at any time after March 1, 1942, at a rental below the rental received on March 1, 1942, be increased to the maximum ceiling of the freeze date either to an old or a new tenant?" The answer was widely circulated by the Real Estate Board of New York among its members. On the basis of the Administrator's Designation and Rent Declaration of April, 1942, and of the quoted question and answer of October, 1942, the Manhattan Voluntary Rent Control Committee advised owners and agents that "apartments rented at a rate lower than that received on March 1, 1942, could be returned to the March 1, 1942 level when leasing and economic conditions permitted, in the event of promulgation of rent control in New York."

The complainant alleges that by reason of the foregoing facts it believed that in the event of the imposition of rent control in the area it would be permitted to charge rents which were in effect on March 1, 1942. Subsequent to April 28, 1942, it entered into leases for 16 of its 58 dwelling units at rents lower than the March 1, 1942,

rentals for the purpose of reducing the number of vacant units and of retaining tenants already in its building. It alleges that it would not have rented these units at the reduced rentals had it not believed that it would be permitted under rent control to increase the rentals to the March 1, 1942 levels. It is said that such a belief was widely prevalent among other New York City landlords.[3]

The complainant suggests that as to it and other landlords similarly situated, that is, as to all those who reduced their rentals in the belief that in the event of rent control March 1, 1942, would be the maximum rent date, the rent regulation is invalid unless it is amended so as to permit them to elect March 1, 1942, as the maximum rent date or in the alternative so as to permit them individually to petition for adjustments of their maximum rents in order to bring them up to the rents received on March 1, 1942. The Administrator urges that neither is practicable. He contends, moreover, that neither amendment is necessary to the validity of the regulation. Since, for reasons which will be stated, we agree with the Administrator that the regulation, as applied to the complainant and those similarly situated, is not invalid it is unnecessary for us to consider the complainant's suggestions as to the form of relief which they should receive.

■ The Administrator's Designation and Rent Declaration had a limited function under the Act. 50 U.S.C.A.Appendix, § 901 et seq. It was not intended that rents should be controlled thereby. Indeed, its underlying purpose was to make clear the necessity for rent stabilization in the particular areas and to advise local authorities as to what the Administrator would consider an effective method of achieving rent stabilization so as to avoid the necessity of control by him. The Designation and Rent Declaration was entirely advisory and was concerned solely with recommendations which at the time appeared appropriate to achieve rent stabilization.[4] It is obvious that the Administrator could not on

[2] 7 F.R. 3195.

[3] Between March 1, 1942, and March 1, 1943, there were rent decreases for 125,-868 dwelling units in New York City.

[4] Section 2(b) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 902(b), provides: "Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area."

April 28, 1942, have recommended to local authorities as a guide for imposing rent controls any date which was not prior to that day.

██ ██ The Administrator's recommendation to the local authorities that the maximum rent for housing accommodations rented on March 1, 1942, should be the rent for such accommodations on that date may not properly be interpreted as a representation by him that March 1, 1942, would be the maximum rent date in any rent regulation subsequently promulgated by him. Indeed a Designation and Rent Declaration, if so construed, would be inconsistent with the statutory duty imposed upon the Administrator by the Act to establish maximum rents which in his judgment will be generally fair and equitable. For Section 2(b) of the Act directs the Administrator in establishing maximum rents to ascertain and give due consideration to the rents prevailing immediately before the time that defense activities shall have resulted in increases in rents inconsistent with the purposes of the Act. Spaeth v. Brown, Em. App.1943, 137 F.2d 669; Equitable Trust Co. v. Bowles, Em.App.1944, 143 F.2d 735. Therefore, when on October 8, 1943, the Administrator issued the rent regulation it was not only his right but his statutory duty to ascertain and fix as the maximum rent date that date which was closest to the time when defense activities had actually resulted in rent increases. His conclusion that that date was March 1, 1943, has not been assailed by the complainant.

██ It was, therefore, an error of law for the complainant. to conclude that because the Administrator recommended March 1, 1942, in his declaration, that date would necessarily be the maximum rent date subsequently to be fixed. The fact, if it be one, that the complainant and others reached an erroneous legal conclusion as to the effect of the Administrator's Designation and Rent Declaration was not a factor of the kind for which the Act required the Administrator to make an adjustment in fixing the maximum rents for the area.

Moreover, the complainant, if it had examined the rent regulations issued for the various defense-rental areas in the country, would have learned that it had not been the Administrator's uniform practice to adopt as the ultimate maximum rent date the date originally suggested in the Designation and Rent Declaration. Thus, in the following defense-rental areas for which rent regulations were issued before the regulation was issued for New York City, the maximum rent date fixed in the regulation finally issued was not the same as the date recommended in the original Rent Declaration.

██ Nor do we think that the affirmative answer given orally by an official of the regional office of the Office of Price Administration to the hypothetical question put to

| Defense Rental Area | Date of Declaration | Maximum Rent Date Recommended in Declaration | Maximum Rent Date Actually Established | Effective Date of Rent Regulation |
|---|---|---|---|---|
| Key West (Fla.) (7 F. R. 3195) | 4/28/42 | 3/1/42 | 10/1/41 | 10/1/42 |
| Miami (Fla.) (7 F. R. 7942) | 10/5/42 | 3/1/42 | 9/1/43 | 11/1/43 |
| Orlando (Fla.) (7 F. R. 3195) | 4/28/42 | 3/1/42 | 10/1/41 | 11/1/42 |
| South Bend (Ind.) (7 F. R. 1682) | 3/2/42 | 1/1/41 | 4/1/41 | 6/1/42 |
| Las Vegas (Nev.) (7 F. R. 3195) | 4/28/42 | 3/1/42 | 7/1/41 | 8/1/42 |
| Choteau (Okla.) (7 F. R. 3195) | 4/28/42 | 3/1/42 | 10/1/41 | 10/1/42 |
| Springfield-Windsor (Vt.) (7 F. R. 3195) | 4/28/42 | 3/1/42 | 3/1/41 | 10/1/42 |

that office justified the reliance now said to have been placed upon it. It is doubtless true that the question was framed upon the implied assumption that the rent freeze date would be March 1, 1942. But it asked only whether an apartment rented after that date for a rental below the rental of that date could be increased "to the maximum ceiling of the freeze date." The question included neither an express assumption that the "freeze date" would be March 1, 1942, nor an inquiry as to whether the two dates would coincide. The affirmative answer given to the question was, therefore, strictly accurate.

Finally it may be pointed out that the newspaper articles to which the complainant refers cannot support its contention. Such articles obviously did not bind the Administrator. Landlords in the area had no right to rely on them in view of the plain mandate of the Act which compelled the Administrator to select as the maximum rent date the latest date prior to the time that defense activities began to cause rent increases in the area. Moreover, since the great majority of leases in the area calling for lower rents than those charged on March 1, 1942, were made for a period of one year commencing October 1, 1942, they could not have been made in reliance upon the answer to the hypothetical question, which was given in October, 1942, and not publicized until November 9, 1942, or upon the newspaper article relied on which was published July 29, 1943.

A judgment will be entered dismissing the complaint.